UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT T. KLEIN,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05309-RBL-KLS

REPORT AND RECOMMENDATION

Noted for March 2, 2012

     Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

     On October 15, 2008, plaintiff filed an application for disability insurance benefits, alleging disability as of December 10, 2005, due to arthritis, diabetes, back problems, and high blood pressure. See Administrative Record ("AR") 15, 98, 123. His application was denied upon initial administrative review and on reconsideration. See AR 53, 62. A hearing was held before an administrative law judge ("ALJ") on November 18, 2009, at which plaintiff, represented by

REPORT AND RECOMMENDATION - 1

counsel, appeared and testified, as did a vocational expert. See AR 26-46.

On December 10, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 15-22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 3, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On April 21, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#4. The administrative record was filed with the Court on July 5, 2011. See ECF #15. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in failing to consider all of his severe impairments; (2) in evaluating the medical evidence in the record; (3) in discounting plaintiff's credibility; (4) in assessing his residual functional capacity; and (5) in failing to find him disabled at step five of the sequential disability evaluation process.[1] For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and thus recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a claimant cannot perform his or her past relevant work at step four of the sequential evaluation process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).

REPORT AND RECOMMENDATION - 2

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. [§ 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect her [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff had severe impairments consisting of degenerative disc disease, diabetes mellitus with decreased sensation in his fingers and obesity.

REPORT AND RECOMMENDATION - 3

See AR 17.  Plaintiff argues the ALJ erred in not also finding his arthritis and/or carpal tunnel syndrome to be severe.  The only evidence plaintiff cites to support such a finding, however, is his own testimony.  Indeed, evidence of significant work-related limitations stemming from an arthritis or carpal tunnel syndrome diagnosis is essentially absent from the medical evidence in the record. See AR 162-63, 179-95, 197-99, 214, 216-22, 227-34.

At step two of the disability evaluation process, although the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.  *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities*. . . .

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  It is true that plaintiff's treating physician, Timothy J. Gray Sr., D.O., wrote a letter in which he opined that due to his "multiple medical problems" – including "a history of carpal tunnel syndrome, arthritis of his acromion clavicular joint" and "degenerative joint disease in [the] MP joints of his hand" – he "should be considered for Social Security Disability."  AR 111; see also AR 239-41 (in which Dr. Gray found him to have significant limitations due again in part to carpal tunnel syndrome).  In addition, Virginia Shinobarger, D.C., opined in relevant part that plaintiff had "increased muscle tone in his arms with multiple trigger points and fixations in his . . . wrists and hands," and that his "condition" was "expected to deteriorate with time."  AR 113.

In regard to the findings of Dr. Gray and Ms. Shinobarger, the ALJ found in relevant part as follows:

REPORT AND RECOMMENDATION - 4

> . . . At Mountain View Medical Center the claimant was seen by Doctor . . . Gray . . . who stated that the claimant has received treatment at their faculty [sic] for 11 years and has been diagnosed with degenerative disc disease and diabetes mellitus. He also stated that the claimant should be considered for social security disability (3F/1). In addition, the claimant was treated at Maple Lake Chiropractic Clinic, by [Ms.] Shinobarger, who stated that the claimant's condition is expected to deteriorate with time (6F/1). However, both of these limitations are vague. The opinions of Dr. Gray and Ms. Shinobarger fail to identify any specific limitations identified with the claimant's impairments. Therefore, the undersigned gave their opinions little weight.
>
> Doctor . . . Gray also completed a questionnaire concerning the claimant's impairments dated September 18, 2009. The doctor stated that the claimant continues to suffer from degenerative disc disease, diabetes, and diabetic neuropathy of fingers. In addition, he stated that the claimant's pain is much worse this year. He opined that the claimant could occasionally lift less than 10 pounds, and frequently lift no weight; that he can stand or walk for 20 minutes at one time, and a [sic] over an eight hour day can stand or walk for up to one hour. In addition, he opined that he can sit for one hour over an eight hour day; that he has limited lower and upper body abilities; that he can never climb, balance, stoop, kneel, crouch, crawl, reach, finger, feel; and can only occasionally handle. Lastly, he stated that his symptoms would increase if he were placed in a competitive work environment, and that he would likely miss more than two days of work a month due to his impairments (10F/1-3). The undersigned gave little weight to the opinion of Doctor Gray that was expressed in this questionnaire for several reasons. First, his opinions are not in accordance with the claimant's own testimony that he can lift up to 50 pounds if the item is at table height. In addition, his opinion is not in accordance with the medical evidence as a whole or the claimant's activities of daily living as demonstrated by the claimant's ability to walk 200 feet to check his mail and walk back.

AR 19-20; see also AR 21 (stating further that "little weight" was given to Dr. Gray's and Ms. Shinobarger's opinions, because their opinions were "vague and/or are not in accordance with the medical evidence as a whole or [plaintiff's] activities of daily living").

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

REPORT AND RECOMMENDATION - 5

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need

REPORT AND RECOMMENDATION - 6

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff asserts in regard to Dr. Gray's opinion that he should be considered disabled for Social Security purposes, that "clearly [it is] not the case" that Dr. Gray failed to identify any specific limitations stemming from his impairments. ECF #18, p. 13. But Dr. Gray merely listed plaintiff's diagnoses and did not in fact link them to any actual work-related limitations. See AR 111; Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is not sufficient to prove disability). Accordingly, the ALJ did not err in rejecting Dr. Gary's opinion due to its lack of specificity.

In terms of the questionnaire Dr. Gray later completed, the undersigned agrees, as further discussed below, that the record fails to reveal plaintiff has engaged in activities to an extent that necessarily calls into question his allegations of disability. Those activities, accordingly, also do not necessarily conflict with the findings contained in Dr. Gray's questionnaire. See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's opinion regarding marked limitations in part because reported activities of daily living contradicted that opinion). Thus, this was not a proper basis for rejecting the findings contained in that questionnaire.

On the other hand, the ALJ did not err in rejecting those findings on the basis that they

REPORT AND RECOMMENDATION - 7

are "not in accordance with the medical evidence as a whole," given that no other medical source has assessed plaintiff with the severity of limitation found by Dr. Gray. AR 20; see also AR 162-63, 179-95, 197-99, 214, 216-22, 227-34. Plaintiff argues that the record shows he has a number of physical impairments. Again, however, the mere existence of an impairment is not sufficient to establish disability. See Matthews, 10 F.3d at 680. Further, it was not at all unreasonable for the ALJ to find plaintiff's testimony that he can "*easily* lift 50 pounds" sitting at a table (AR 36 (emphasis added)) to be indicative of an ability to lift greater than that assessed by Dr. Gray (i.e., occasional lifting of only ten pounds and no frequent lifting at any weight), even though plaintiff did not actually specify exactly how often he could lift 50 pounds. Accordingly, overall the ALJ did not err in rejecting Dr. Gray's findings and opinions.

II.     The ALJ's Evaluation of the Opinions of Dr. Webster and Dr. Merrill

In addition to challenging the propriety of the ALJ's rejection of Dr. Gray's findings and opinions, plaintiff also takes issue with the ALJ's following findings:

> A consultative examination was performed on January 29, 2009, by Kim Webster, M.D., a state agency consultative physician who noted that the musculoskeletal exam was normal with respect to [the] claimant's hands, lower back, knees, and shoulders. Dr. Webster diagnosed the claimant with morbid obesity, and diabetes. However, the doctor noted that there is no objective evidence to restrict [the] claimant's lifting, carrying, standing, walking, or sitting. The doctor did note that [the] claimant's obesity would make it difficult for him to bend, stoop, crawl, and kneel (4F/6). The undersigned gave great weight to this opinion because Dr. Webster examined the claimant and he [sic] the opinion is consistent with the balance of the medical record.

> A physical residual functional assessment of the claimant was performed by Doctor Jeffrey Merrill, a general practice physician, dated May 5, 2009. He opined that the claimant can lift 50 pounds occasionally, and 25 pounds frequently; that he can stand and walk up to 6 hours in an 8 hour workday; he can sit 6 hours in an 8 hour workday; he can frequently balance and climb ramps and stairs; and he can only occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds (8F/2-3). Though Doctor Merrill is neither an examining nor a treating physician, his opinion is based on a review

REPORT AND RECOMMENDATION - 8

> of the evidence and he is familiar with Social Security policies and procedures relative to disability determinations. Therefore, the undersigned gave his opinion considerable weight.
>
> . . .
>
> . . . The undersigned has given great weight to the opinion of Doctor Webster because she personally examined the claimant and her analysis was very thorough. However, she did not take into account the combined affect [sic] of his impairments on his ability to work. In addition, the undersigned gave some weight to the opinion of Dr. Merrill because he has knowledge and training, which could reasonably be expected to give him great insight into the limitations imposed by the claimant's impairments. . . .

AR 20-21. Plaintiff argues the ALJ erred in deferring to the opinions of Dr. Webster and Dr. Merrill, because they did not have the longitudinal perspective Dr. Gray had as a result of having treated him over a period of eleven years. But, as discussed above, the ALJ gave valid reasons for rejecting the findings and opinions of Dr. Gray, and therefore it is irrelevant that neither Dr. Webster nor Dr. Merrill possessed the same longitudinal perspective. Nor, for the same reason, does it matter that Dr. Merrill did not have the benefit of Dr. Gray's questionnaire.

Plaintiff further argues Dr. Merrill found Dr. Webster failed to consider the combined effects of his multiple upper extremity conditions, and found the latter's opinion was not entirely reasonable based on the record. But this is not what Dr. Merrill in fact stated; noting instead that Dr. Webster's opinion "of no physical limitations" was "not fully adopted," a conclusion adopted as well by the ALJ and supported by the weight of the medical evidence in the record. AR 233. Dr. Merrill's statement, however, does not at all support plaintiff's claim that she has significant work-related limitations stemming from arthritis and/or carpal tunnel syndrome. Further, while the undersigned agrees that familiarity with Social Security policies and procedures is not alone a sufficient basis for upholding a non-examining physician's opinion, as noted above this was not the only, or necessarily even the main, reason the ALJ gave for relying on Dr. Merrill's opinion.

REPORT AND RECOMMENDATION - 9

See AR 20-21 (noting as well Dr. Merill's medical expertise and his medical evidence review, which, as discussed herein, supports ALJ's findings). The ALJ, therefore, did not err in relying on the opinions of either Dr. Merrill or Dr. Webster to the extent that he did.

III. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of

REPORT AND RECOMMENDATION - 10

symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part on the basis that the medical evidence in the record was inconsistent with his allegations of disabling pain. See AR 19. This was a valid basis for finding plaintiff to be not fully credible. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination by ALJ that claimant's complaints are not consistent with objective medical evidence can satisfy clear and convincing requirement). The ALJ also did not err in pointing out plaintiff had not been completely compliant in treating his diabetes mellitus. See AR 19-20; Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course of treatment can cast doubt on sincerity of claimant's pain testimony).

The ALJ further discounted plaintiff's credibility in part on the following bases:

> The course of medical treatment and the use of medication in this case are not consistent with the disabling levels of pain [alleged]. While the claimant asserts numerous subjective complaints, the record reveals he has received only conservative and routine treatment. There is no evidence of significant side effects from his medications. The claimant has not been hospitalized for any significant period of time. His impairments have not received more aggressive forms of treatment such as surgery. . . . This level of treatment suggests the claimant's impairments do not result in significant functional limitation, which precludes him from engaging in basic work activity.

AR 20. These too were valid reasons for finding plaintiff to be not entirely credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding discounting of claimant's credibility in part due to lack of consistent treatment, and noting that fact claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request, serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d

REPORT AND RECOMMENDATION - 11

1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

Lastly, the ALJ discounted plaintiff's credibility in part because:

> . . . His daily activities are quite involved. He is able to load and unload a dishwasher, he can operate a computer to check email; and he takes ibuprofen when he has pain. Furthermore, he testified that he is able to lift 10 pounds off the ground and 50 pounds if the object is on a table. Therefore, the claimant's daily activities suggest a level of functioning greater than what he has alleged in his application and testimony.

AR 21. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, they can "meet the threshold for transferable work skills." Id. Second, they can "contradict his [or her] other testimony." Id.

Under the first ground, a claimant's testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. But the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

The undersigned agrees with plaintiff that the ability to load and unload a dishwasher, to operate a computer to check email and to take over-the-counter pain medication is not sufficient in terms of daily activities to call into question his credibility regarding his complaints under the framework outlined in Orn and Smolen. On the other hand, plaintiff's testimony concerning his ability to lift does contradict his allegations of complete inability to perform work, as it does Dr. Gray's assessed lifting limitations as discussed above. Accordingly, overall the ALJ did not err

REPORT AND RECOMMENDATION - 12

in discounting plaintiff's credibility for the above stated reasons. See Tonapetyan, 242 F.3d at 1148 (fact that one stated reason for discounting claimant's credibility was improper does not render credibility determination invalid, as long as it is supported by substantial evidence); Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity to perform sedentary work, with the additional limitations that he can frequently handle and finger, that he

REPORT AND RECOMMENDATION - 13

can occasionally climb ramps or stairs, stoop, crawl, crouch, and kneel, and that he should never climb ladders, ropes or scaffolds. See AR 18. Plaintiff argues the ALJ's RFC assessment fails to take into account appropriate limitations stemming from her bilateral hand problems. However, as discussed above, the record does not support a finding of severe hand impairments, nor does it support inclusion of significant work-related limitations resulting therefrom. Thus, for the same reason, the undersigned rejects plaintiff's additional argument that she should be found disabled under the Medical-Vocational Guidelines (the "Grids") based on such limitations.[2]

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 2, 2012**, as noted in the caption.

DATED this 14th day of February, 2012.

Karen L. Strombom
United States Magistrate Judge

---

[2] See Tackett, 180 F.3d at 1098-1101 (ALJ can find claimant to be capable of performing other jobs existing in significant numbers in national economy at step five of sequential disability evaluation process either through vocational expert testimony or reference to Grids); see also Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000); 20 C.F.R. § 404.1520(d), (e).

REPORT AND RECOMMENDATION - 14